The next case is Lebeau, Barry Lebeau, et al. v. United States, 06-1072. Ms. Peterson. May I please be called? My name is Elizabeth Andrews. I'm from the Justice Department here today on behalf of the United States. This case concerns the distribution of Judgment Content appropriated by Congress for the sentence of one of the historical suit trials at Mississippi. Ms. Peterson, let me ask you, let's bear with me here for a moment. I realize your position is that what we have to look at is the 1972 order, if you will, or the 1972 Distribution Act as amended by the 1998 legislation, correct? That is correct. Okay, now, the District Court did not follow that approach, okay? That's right. The District Court said we have to determine whether there was a violation of a trust obligation by looking solely to the 1972 Act, correct? That is correct. Okay, now, let's assume for the moment that was the correct construct. I understand that you say, no, no, that was wrong. Leave that aside for the moment. So I'm going to take you into an area that you don't agree with the premise, but you know how the oral arguments go. So assume for the moment that the District Court was right in that regard, okay? And were governed by the 1972 Act. And the Court found a violation in two ways. One, failure to make a partial distribution in 1982, correct? And secondly, failure to make a full distribution by 1987. Now, as I understand from looking at the District Court opinion, the Court seemed to say that this was, that there was pressure brought or something during this period on the BIA, correct? There is, the record does contain evidence that all parties were put under pressure. Now that, you mentioned the record, and that's the question that comes to my mind here. There is a statement here that in the Lebeau case that's before us, that the record in the Casimir-Lebeau litigation is made a part of the record in this case, correct? Now, does that mean that the findings that the District Court made in that case are controlling it? Because I didn't see, I mean, here's the difficulty I'm having. I did not see you challenging, the government challenging, I didn't see the government challenging any of these determinations of a factual nature that were made in the, you know, in the previous litigation. There, we have not had facts that don't affect the outcome here as you, with the controlling law in place at the time. But what if one looks at the, what if one takes the position that the District Court was correct, that it's the 72 Act that governs whether there was a, whether there was a breach of the trust obligation, okay? Then where are you on your facts? I realize you say there aren't fact issues because you're looking at the case through the lens of the 72 Act as amended by the 98 Act, correct? Correct. But assume, but assume for the moment that the District Court was correct by looking just at the 72 Act, where does that leave us in terms of your position in terms of findings of fact? We, the findings of fact that were made in the past in the local decision do not undermine our position, do not. The, both parties put the pressure on BIA or Congress to change the way that the distribution was accomplished, either by reallocating funds or by moving the process ahead. But aren't you stuck with then, if one accepts, given what you're saying, if one accepts that the 72 Act unamended controls, aren't you then stuck with the determination that there was a breach of the trust obligation? The District Court also found that any such breach resulted in no financial injury to these claims. It only found that in this case it was time to fire, although not by our exception of patients. No, but he said the trust obligation was breached, and that breach enabled time to pass so that the corpus of the trust remained, and hence Congress was able to step in in 98. And that is what it found, right? It therefore concluded that the Secretary of the Interior was liable to damage the actions of Congress. But let me ask you, if one accepts the 72 statute, he found those two breaches that we noted earlier, correct? He did find them. If one accepts the 72 statute is controlling, do you dispute his finding as to those two breaches? Those two breaches. There are no such duties to do either of those two things. And, in fact, the louder decision being circled would hold that both of those actions that the court had required in failure to accomplish them as a breach were themselves bridges of trust. Because they would have allocated to this small group of lineal descendants the share of the funds that should have been allocated and ultimately wasn't allocated to a larger group that did not receive notice at that time. So you're saying even if it's just the 72 Act that controls, you're saying the district court was wrong in finding those two breaches? Because I didn't really see... No, we do not argue that that is the case. I mean, you didn't... No, but that's your construct of the case. And I understand that. But if one disagrees with that, well, let me ask you this. If one disagrees with your view of the case, namely that it's the 72 Act as amended that controls, and then one says the 72 Act is what solely controls, okay? I realize you disagree with that. But if one comes to a different conclusion, does that mean you lose? Only if the case is not therefore barred by a set of limitations. The court has heard it here and held that the enactment of the amendment is effective for purposes of triggering a set of limitations, but not for altering the Secretary's... You're not saying there's a... You're not making a causation argument here. In other words, you're not saying... You're not making the argument that, okay, I'll assume the 72 Act controls, okay? And I'll assume that the district court was correct in finding these breaches, okay? You're saying under that situation, you would lose on the merits. Not necessarily, Your Honor, because the district court also found that those breaches did not result in any financial injury. But how did he award damages then? It found damages because Congress, by amending the statute and reallocating the fund, caused the plaintiffs to lose... So would you make a causation argument? We have made this argument in our briefs. There is no causation link between the Secretary's delay and Congress's enactment of amendments to the statute. But why isn't the result the same? There was a breach. After all, in the savings and loan cases, it was Congress that changed the law, and that led to a breach of contract. This was a breach of trust. Your Honor, in this case, the actions of the Secretary were not in the causal chain. What the district court relied on was the notion that... But how about the actions of Congress? Congress did cause a change, but that change did not deprive the plaintiffs of anything to which they had an entitlement. What you're saying is that under these various Supreme Court cases, that Congress can change the allocation without incurring liability, and in that respect is different from the Winstar cases. Absolutely, Your Honor. There is an absolutely clearly established line of authority that Congress has plenary authority to revoke or revise allocations of these kinds of funds until the funds are distributed. That authority is what was exercised in 1998, and it was not the Secretary that was responsible for that action, it was the Congress. And therefore, there can be no attribution of any consequence from that action to the Secretary. Moreover, in order to establish a breach of trust and damages for that breach, the plaintiffs here would have to establish that Congress had created the duty, that the Secretary had breached it, and that Congress had mandated a remedy in damages for that breach. There is absolutely no evidence that Congress intended for these plaintiffs to receive the amount that they claimed they were indebted to. In fact, Congress later, and after this statute, clearly indicated that it knew about the delays, that it knew that there was going to be a wider pool of land-resented plaintiffs, and providing one other thing is that the amount allocated to land-resented should be further reduced if the number of land-resented identified were fewer than 2,988. So suppose, to come back to what Judge Schall was asking about, suppose we didn't have a 1998 statute here, and the suit were brought many years earlier, so there was no statute of limitations issue. Do you agree that you are not arguing that the delay in payment was not a breach of trust? The question here is whether the delay was not a breach of trust. No, no, no. Please answer my question. Are you arguing that the delay would not be a breach of trust? We are not arguing that. However, that would be an appropriate question, and in this case it would be presented differently at this time. The alleged breaches are founded on the notion that the Secretary was required to do actions of the statute, but because the district court found that the Secretary's actions had not resulted in any financial damage, the court need not reach the question whether there was a breach that really was no injury. No, but let's assume you do have to start. I mean, typically, you have to determine, is there a breach? Then did the breach cause a financial loss, correct? That is correct, Your Honor, but you don't have to do that. Well, no, but let's assume one looks at it a little differently, okay? Assume one finds, you're not challenging, as I understand it, if one looks at just the 72 Act, and I realize, Mr. Pearson, you've got a different view of the case, no question, and it's well stated in your brief, but we have to explore the different parameters because, you know, that's the way the district court judge decided it. Assume for the moment one looks at the case as the controlling piece here being the 72 Act, okay, and he found two breaches. If that's the case, you're not saying those breaches didn't occur, right? Those events didn't occur. Yeah, and you're not challenging his determination that those were breaches of the trust obligation. You're not challenging that. Okay, now, but you're challenging causation, right? That is correct. Okay, now, in that regard, does this case, in your view, and this is an important question, just for me, maybe not for anyone else, but do you feel if one looks at the 72 Act as what controls, and if one accepts that the breaches that the court found did exist, do we have to send this case back for any kind of a factual determination on anything, or can we decide the case as it is before us? I understand the question, Your Honor. I do not believe that there's a need for any sort of factual finding, because the question in that issue is whether the statute created duties that were breached by those actions. I think that an interpretation of the statute is sufficient to determine whether those actions that were found to be breaches of trust by the district court were, in fact, breaches of any duty because of the statute. Is that the 72 Act alone, or the 72 Act as amended? Well, under our theory, it would have to be amended, even under the 1972 Act. Oh, I think there's no question. Under your theory, the case is over. But the question is, do you look at the 72 Act by itself? That's the issue. At least for me. I can't speak for my colleagues, obviously. Not yet. We believe that under any theory, this case is over. But there is no basis in that, in fact, the district court had not found that the injury occurred many, many, many, many years after the alleged actions. And therefore, the action wasn't barred. Do you want to save the rebuttal of your time? Yes. The remainder of your rebuttal time. Mr. Meyer, hand me. May I please record? There's no question here. Is there that Congress has the power to retroactively say there was no right to the distribution under the 72 Act? That's the Jim case? That's the law of the land. Right. Okay. So the question is, what did Congress intend to do in the 1998 Act? Did it intend to eliminate breach of trust claims, such as the one that you're bringing here, right? There's nothing in the Act that indicates that. But no, but that's the question, right? That's the question. Yeah. That's the question that the resolve addressed. Right. But the 1998 Act did explicitly amend the 1972 Act, right? Correct. So why shouldn't that be viewed as changing the substantive rights and obligations under the 72 Act? Because this is, Your Honor, a Tucker Act case. This is a Tucker Act case. This is not a case where we're fighting over the amount in the fund. This is a Tucker Act case where Mr. Grossenberg represented very little. And by the way, very little is not a middle-aged man. But in 1973, he completed everything he was to do under the 1972 Act. And let me read what the title of that act is, because that's what we make the cases on. In 1972, Congress passed an act. It said, provide for the distribution of the funds appropriated to pay the judgment of the Mississippi Sioux Indians in Indian claims under the So-and-So. That was the resolve of the 1968 subject. So in 1973, very little signed up and claimed to be a Mississippi Sioux Indian in the title. But I don't think you're addressing the question I'm asking. We have this explicit amendment to the 72 Act in 1998, and it constitutionally changes the distribution. And notwithstanding that act and the power of Congress to change the distribution, they're saying we can still recover. We can still recover under trust theory. And why, the question is, why shouldn't the 1998 Act be read to change the distribution rights under the 72 Act? Because isn't that explicitly what it did? Because I don't think Congress, nor any honorable court, would see, knowing you have the Tucker Act, would forgive, so to speak, or wipe away the outrageous breach of trust that occurred in this case. And that's what Judge Pearsall had before him. He found that the outrageous breach of trust should be remedied. He looked at the purpose of the Tucker Act, which is explained and adopted by the U.S. Supreme Court, and said it's a Tucker Act. And this is a little Tucker Act. We're talking about $491. Indians were to be given their fair day in court so they could call the various government agencies to account on the obligations that the federal government assumed. If we fail to meet these obligations by denying access to the courts where trust funds have been improperly dissipated or fiduciary duties have been violated, we compromise the national honor of the United States. And Judge Pearsall, who is well respected in our state and was elected president of the Federal Judges Association, found that in this case— That's irrelevant, Mr. Meyer. No, but it's important because he felt it was the honor of the United States. In 1972, there were clearly trust duties. I didn't know that the Tucker Act allowed suits to vindicate the honor of the United States. I thought that it was based on specific statutory provisions. And you're relying on the 72 statute. The 72 statute has been amended in 1998. Now, why doesn't that wipe out the claim? But it didn't change the Secretary of the Interior's duty to be a trustee for the trust funds. For the trust funds. But, Mr. Montgomery, if this case—if instead of the 98 statute, we had a 1983 statute that said exactly what the 98 statute said, you wouldn't be here, would you? Don't know. I wouldn't know what they're—well, I don't know. Because, I mean, there were—he said there were two breaches. One, in 82, fair to make a partial distribution. Correct. And then the next breach he found was fair to make any distribution between 82 and 87 because, I guess, what he found was that the BIA turned its attention to the Pembina matter. And there was an injunction about that time. Well, the injunction came in in 87, and no one says the Bureau did anything improper after 87. But isn't Judge—I mean, isn't Judge Dyke correct that the 98 statute changed—amended the 72 Act to change the distribution? It did, Your Honor. And your argument isn't that—because, I mean, you said in your brief you don't challenge the ability of Congress to do that, and you don't challenge the result of that. But what I understood you to be saying in your briefing was that the problem here is that because BIA didn't act promptly pursuant to its trust obligation, the money was still around in 98 for Congress to do this.  Correct. And, of course, clearly, our client period had gotten no portion of the 72 Act by 98. And that is our point, is that but for the breach of trust in the Secretary of the Interior over many, many years, there would have been no fund. And Judge Pearsall recognized that and said, I find that there was a breach of trust, and under the White Mountain Apache case, that it is permissible to have a retroactive damages review to deter the Secretary of the Interior from doing this. I mean, if we adopt the government's position, are we going to hear maybe 35, 36 years later because the Secretary of the Interior didn't follow Congress's Act? And that's what we're addressing here. We're addressing a retroactive violation over many, many years of the Secretary ignoring, ignoring the 1972 Act of Congress. But the problem, do you admit, is that Congress can change the distribution rights retroactively, and that's exactly what it purported to do in 1998. And you're saying that through a trust theory, we can ignore that, that the Congress says no money to these people, but you say, oh, yes, we do get money because it's on a different theory, on a breach of trust theory. How could Congress possibly have intended that? Well, Congress had to know that the Tucker Act was in existence. Congress had to know of the recent United States Supreme Court decisions, and Mitchell too, and White Mountain Apache, and had to understand when they passed the Tucker Act that it was for the very purpose of government officials not doing their job. And that you could have an Act under a trust theory that never challenged any of the factual findings, that this trust theory was such that you can go back in time, and all that the result is, that if they would have followed the law in 1982, 83, 84, 85, this is the amount that variable would have gotten. Because they would have predated the 98 statute. Correct. That's your theory. Correct. And what I'm saying to you tonight, is we have to call Congress. I mean, we don't, Mr. Grossberg, I've come from anything like that. We're familiar. Congress can do what it will. We're here to deter under the little Tucker Act, very little, and I understand the importance of it. Why would I have to wait 34 years to get the payment under the 1972 Act? If Congress wanted to eliminate the trust liability in connection with changing the distribution so that there wouldn't be a way to get around the change in the distribution, what should it have said in the 1998 Act that it didn't say? Well, it should have said that no action can be brought for the prior violation of any trust responsibility of the Secretary of the Interior. I mean, the Secretary of the Interior, Attorney Rom, Your Honor, was given, so to speak, a bag of money in 1972 before it passed the Act, but was given very specific instructions what to do with that money. And failed to do it. Had it given to an attorney in a trust account, and the attorney in the trust account would have never paid out a portion. They paid the tribes right away. But once they had the role, although that took a long time, but Judge Purcell said, you had the role in 1982, and we stand here today, we have not accomplished one thing. There is a role on justice. We don't know why the Secretary of the Interior refused to follow the 1972 law. He refused to follow it. He didn't pay the money. The Aberdeen, South Dakota area office had the role, but everything was done under the 1972 Act where he had this supposed to be a bag of money. And he refused to pay it out. And through the facts of this case, we've never been, the court has never been given a reason why the Secretary of the Interior didn't do his job. You're talking about making a partial distribution. Correct. Because it does appear that the reason that a distribution was not made after that, up until 87 when they were about to make a distribution, but the lawsuits intervened, it does appear that during that period they were involved in sorting out these 24,000 Pembina claimants. Yes. I mean, that's the reason. That's what the record we have before us is. Yes, that's correct. But attention here in blue shows that the person that handled those claims had all the names ready to go, asked Washington permission, never received it, and asked him to obtain permission. And that's correct. This case is about the White Mountain statute. And for the government to succeed this court. Well, but White Mountain didn't involve a situation in which a later statute had changed the earlier obligation, right? No, it did not. Do we have any case that involved that situation? If we had, my mind was put aside. And I think that's why I wanted to remind the court about the purpose of the cover act, about the White Mountain case. Because White Mountain is interesting, like our case is interesting. You asked earlier, Your Honor, what if the 98 Act hadn't been passed? We still would have been paid. We'd still be standing there. But what rights would Gary Lebow have? An injunction. He would have an injunction action to say, do what Congress told you to do in 1972. What if he still refused? What if he still refused? I think it's a he. We've gone through eight presidents since this was passed. I don't know. But what would we do? I would be in the Supreme Court of the United States instructing all of us practitioners under White Mountain to say, look, you know, you can bring an injunction or some action to enforce the statute. Or on the other hand, you can bring a retroactive damages fine. You can do one or the other because, as the Supreme Court said, the trustee is under their duty to use reasonable care and skill to preserve the trust property. It naturally follows that the government should be liable to damages. I don't understand the government to be arguing here that if the 1998 Act hadn't been enacted, that there wouldn't be a potential breach of trust claim under the 72 statute for failure to make the distribution. I don't think they're making that argument. No. The question of the argument they are making is that, you know, whatever obligation that was under the 72 Act was changed in 1998. But the obligations under the 72 Act were not changed as far as the fiduciary duties to follow the 1972 distribution act. Those duties were not changed. The amounts and the division of the trust amount was changed. And but for the fiduciary failure, fiduciary responsibility, there would have been no pot left. And that's what Judge Hirsol found. But for the violation of fiduciary duty, the 1998 Act, except the statute of limitations running, is the real effect on the breach of trust that occurred from 82 to 88. What is the effect, though? What is the effect, Mr. Mario Henry, of the finding in, I guess it was maybe the second, I'm not sure if it was the first or the second, Casimir-Lebeau decision, where the district court said that there was no vested right. I guess it was rejecting the Fifth Amendment takings claim that was advanced by the plaintiffs here, saying that there was no vested right in the fund. That's correct. There was no vested right in any particular fund. In our case, our cover act case, which is to deter future conduct, we did not raise that in the very low case. That Fifth Amendment claim. That has to change. Oh, no, I understand you didn't raise it. But how does that maybe play into this case that's now before us? Because, I mean, the government would say, look, even if one looks at just the 72 Act, and I think this is what Ms. Peterson would say, even if one looks at the 72 Act as what was controlling, and even if one accepts Judge Pearsall's determinations as to breach, and even if one doesn't challenge the findings that he said supported the breach determination, still there was no causation. And I'm wondering if, how possibly in that setting, the finding that there was no vested right. I mean, the government would say, look, this was a, you know, the 98 Act was, it wasn't a natural consequence of the breach. I mean, that would be, I think, the government's argument on causation. Right. I think the way the decision answers, the way I would answer it is, at the time of the breach, let's say 1983, at the time of the breach, the trustee had in his possession the $1,700, and he refused to pay it out. And that, that was the breach of trust, and his refusal to pay it out set the amount that Derrida Rowe would have received in 1983. And he took the amount from the 98 Act that he did receive, and the difference was the amount of retroactive damage assessed by Judge Pearsall for the purpose of deterring future violations of the fiduciary duties of the federal government. And I guess that's the only way I can answer it, and my time is up. On behalf of Derrida Rowe, I thank you for your kind attention. Thank you, Mr. Meyer. Henry, Ms. Peterson has three minutes of rebuttal. I would like to make a couple of points. One, during the period between 1983 and 1987, the record does indicate that there were 500 challenges to 20 individuals who had been termed ineligible. And when those 500 challenges had been resolved, and at some 60 or 70 were found not favorable, the Secretary determined that the role was completely closed off. Excuse me, let me ask you. I, I mean, you, you're, I'm glad you mentioned that because the, one of the elements is that the trustee cannot fail to act, the trustee has to act reasonably, okay? And, and the district court here found that, that the trustee did not act reasonably in terms of the distribution. And I'm not trying to, why did, there seemed to be kind of a thin record here for that finding. Why did the government, the government doesn't challenge that factual finding, though. I mean, the government doesn't seem to come in and say that we dispute the finding that we fail to act reasonably. That's correct, Your Honor. And as you know, the reason for that is that this is coming from an entirely different ground to which that may not be relevant. However. But would it be relevant if one looks at the 72 Act as what's controlling? Are you agree, yes, Your Honor? If all the pieces could be put together in the jurisdiction that the 1998 amendments have been triggered for a statute of limitations on 1882 claim. And if you could find that the 1972 statute required a certain allegation of resources as opposed to the typical standard law in which an agency is, if the allegation of resources is limited. It just seems to me that the causation, one can make the argument that the causation chain, from your standpoint, you would make this argument, is a little thin. And as you also mentioned, Your Honor, as soon as the Secretary of National Intention to make a prosecution, the tribes sued and the distribution was broken down. There was no evidence, as far as I'm concerned, that had that announcement been made in 1982, rather than in 1987, an injunction would have been entered at, would not have been entered at the same time. If they were about to distribute in 82 or as soon as they had everything ready, you're saying there's nothing to suggest that the tribes wouldn't have come in at that point as opposed to 87. It's in fact presumptuous to think that they would have been able to, as the Secretary of National Intention, find a reasonable indication to not trace their ancestry to the tribe and that Congress didn't allow them to make a case. There's no evidence that had that announcement made. So their case would have been the same. And my final point before I last for a second is that there was an Administrative Procedure Act claim available to these plaintiffs. If delay was their concern, they could have brought Section 761 unreasonably delayed or denied the using action claim. And they did not do that. So it's not that there is no evidence. But, Warren, I thought you weren't arguing that save the 1998 Act, suppose there never had been a 1998 Act, are you challenging the right to bring a breach of trust claim for failure to make a distribution under the 72 Act? That argument is not for this year. But the points that would be relevant to it are that the statute of limitations almost certainly would bar such a claim and that there is no We probably would also wish to review the 1972 statute to see whether there was actually The government's not enthusiastic about finding breach of trust obligations and statutes. We've had that experience before. Thank you, Ms. Peterson. The case will be taken under advisement.